## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| LISANDRA ALIAGA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONTINENTAL ASSURANCE<br>COMPANY,<br><br>　　　　　Defendant. | Civ. Action No. 06-218 (KSH)<br><br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

## I.      INTRODUCTION

In this diversity case, plaintiff Lisandra Aliaga complains that defendant Continental Assurance Company ("Continental") wrongfully rescinded a $100,000 life insurance policy issued to her late husband, Juan Aliaga, of which she was the named beneficiary.  It is undisputed that the life insurance application contained a material misstatement regarding Juan Aliaga's medical history and that this misstatement affected Continental's acceptance of the risk.  The ultimate issue in these cross-motions for summary judgment is whether Continental properly relied on the material misstatement made on the application in rescinding the life insurance policy.  For the reasons that follow, the Court holds that under the applicable New Jersey statute, Continental properly rescinded coverage based on the misstatement in Juan Aliaga's application, and therefore decides the parties' pending cross-motions as follows:  Continental's motion for summary judgment is **granted** and plaintiff's motion for summary judgment is **denied**.

## II.   STANDARD

Summary judgment is only appropriate if there is no genuine issue as to any material fact for the jury to decide.  Fed. R. Civ. P. 56(c).  A fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and is material if it could affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is inappropriate if the case will turn on credibility determinations.  Id. at 255.

In a diversity case, the Court "must apply the substantive law as decided by the highest court of the state whose law governs the action."  Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 304 n.6 (3d Cir. 1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  If the state's highest court has not addressed the issue, the court must predict how the state's highest court would rule.  Borman v. Raymark Industries, Inc., 960 F.2d 327, 331 (3d Cir. 1992).

## III.   FACTS

Juan Aliaga applied for a $100,000 life insurance policy through Bank of America on June 29, 2001.  (Jt. Stmt. of Facts at ¶ 5.)  Included within the short application was the following question:

3) Be sure to answer all questions (any misstatements may affect your coverage):

In the last 5 years, have you been treated by a physician or other licensed practitioner for any of the following:

a. Heart or circulatory disorder, stroke or high blood pressure,  disorder of the lungs, kidneys, liver, blood, central nervous or digestive systems, diabetes, cancer or tumor, enlarged lymph nodes, lesions or discolored areas of the skin or mouth?

(Id. at ¶ 6.)  In response to this question, Juan Aliaga answered "No."  (Id. at ¶ 7.)  Plaintiff was the named beneficiary on the application.  (Id. at ¶ 17.)

In reliance on the application completed and signed by Juan Aliaga, Continental issued him a $100,000 life insurance policy which became effective on September 1, 2001. (Jt. Stmt. of Facts at ¶¶ 12-13.)  When the policy was issued, it is unclear whether a copy of the application was sent to Juan Aliaga.  (Id. at ¶¶ 21-22.)  Even if the application was sent, it is unclear whether a copy of the application was attached to the policy.  However, it was Continental's normal practice after approving coverage to send a copy of the application back to the insured, instructing the insured to keep it for his/her records.  (Id. at ¶ 23.)

The Uniform Provisions of the policy issued to Juan Aliaga provide:

The Policy, the Master Application, individual applications of the Insureds if any and any attached papers constitute the entire contract between the parties.

(Jt. Stmt. of Facts at ¶ 14.)  The policy also states:

Any statement made by the Holder or by any Insured shall, in the absence of fraud, be deemed a representation and not a warranty.  *No such statements shall void the insurance, reduce the benefits or be used in defense to a claim under the Policy unless it is in writing, a copy of which has been furnished to the Holder or the Insured, whoever made the statement.*

(Id. at ¶ 15 (emphasis added).)

Juan Aliaga died of cancer on July 23, 2003.  (Jt. Stmt. of Facts at ¶ 16.)  Subsequently, plaintiff submitted a claim for the policy's $100,000 life insurance benefit.  (Id. at ¶ 17.)  Pursuant to a provision in the policy that permitted Continental to investigate the insured's medical history if he died within two years of the policy's effective date, Continental required plaintiff to give it access to Juan Aliaga's medical records before it would pay the $100,000 benefit.  (Id. at ¶¶ 15, 19.)

Continental's investigation revealed that Juan Aliaga's answer to question 3a of the application was not true (Jt. Stmt. of Facts at ¶ 10) because he had been diagnosed with Duke's Stage

C colon cancer in December 1998 and was aware that this cancer had recurred in early 2001 (Admin. Rec. at CCC00116). Based on this information, Continental rescinded the life insurance policy and sent plaintiff a refund check for all of the premiums paid. (Jt. Stmt. of Facts at ¶ 27.) Continental wrote plaintiff that if the application had been answered correctly as to 3a, it would not have issued the policy. (Id. at ¶ 26.)

Plaintiff does not dispute that Juan Aliaga's answer to question 3a on the application was a material misstatement and that it affected Continental's acceptance of the risk. (Jt. Stmt. of Facts at ¶ 11.) But she argues that Continental is barred from using the misstatement in the application as evidence in support of its decision to rescind the contract because it failed to attach the application to the policy when issued as required by N.J.S.A. § 17B:24-3(a). Specifically, § 17B:24-3(a) states, "No application for any life . . . insurance policy . . . shall be admissible in evidence in any action relative to such policy . . . , unless a copy of the application was attached to or endorsed upon the policy . . . when issued." Continental argues that N.J.S.A. § 17B:24-3(a) is not controlling because the policy at issue is a *group* life insurance policy and N.J.S.A. § 17B:24-3(e) states that the statute "shall not apply to group life insurance . . . policies." Instead, Continental contends, N.J.S.A. § 17B:27-13 (2004)[1], which is included in an article of the statutory code entitled "Group Life Insurance," controls. Continental concedes that § 17B:27-13 also requires it to attach a group insurance application to the policy when issued, but notes that the statutory language does not punish the failure to attach a group insurance application to the insured's policy with an absolute prohibition on later using the application in a legal contest involving coverage.

---

[1] The Court notes that N.J.S.A. § 17B:27-13 (2004) was repealed effective January 1, 2005. A statute with similar language is presently located at N.J.S.A. § 17B:27-72(d). Because § 17B:27-13 was in effect at all times relevant to this litigation, it is controlling.

-4-

## IV.   DISCUSSION

In this case, the Court is asked  to construe two statutes, decide which one applies, and to determine whether Continental complied with relevant statutory and contractual requirements.  If so, then Continental can rescind Juan Aliaga's insurance policy and will be granted summary judgment as to plaintiff's claims. If Continental did not comply with the applicable statutory and contractual requirements, then no portion of Juan Aliaga's application is admissible and summary judgment is granted to plaintiff.

### A.  The Type of Policy at Issue

The ultimate issue,  whether Continental properly relied on the material misstatement made on Juan Aliaga's application in denying coverage on the policy, requires that the Court decide which statute controls: (1) N.J.S.A. § 17B:24-3, governing the admissibility of insurance applications for individual policies, which by its terms specifically does not apply to group life insurance applications; or (2) N.J.S.A. § 17B:27-13 (2004), the statute governing admissibility of insurance applications for group policies.

Albeit the parties stipulated to an extensive set of facts, they did not stipulate whether the policy issued to Juan Aliaga was an individual or a group policy.  It is unclear whether this was simply an oversight or if the parties could not agree.  But resolution of this issue is critical because the law governing the carrier's obligation differs depending upon which type of policy is involved.

The policy issued to Juan Aliaga is included in the administrative record filed under seal by the parties.  A review of the materials makes it clear that the policy issued to Juan Aliaga was a group policy.  The record shows that the holder of the policy was Preferred Care Association, that the sponsoring member was Bank of New York, and that the insured was Juan Aliaga. (Admin. Rec.

at CCC00116).  The joint statement of stipulated facts indicates that the policy at issue was policy number 02L1718 and numerous documents in the administrative record, such as the master policy and master application, unambiguously refer to policy 02L1718 as a group policy.  (See, e.g., Id. at CCC00001, CCC00002, CCC00005, CCC00006, CCC00007, CCC00062.) For example, the master application for policy number 02L1718 signed by Preferred Care Association states, "Application is hereby made to Continental Assurance Company . . . , for a *Group* Insurance Policy."  (Id. at CCC00062 (emphasis added).)  The record makes crystal clear that Juan Aliaga's policy was a *group* policy.  As such, it falls under the provisions of the  statute governing group life insurance,  N.J.S.A. § 17B:27-13 (2004).

**B.  Admissibility of the Application Pursuant to N.J.S.A. § 17B:27-13 (2004)**

The parties agree that the life insurance application completed and signed by Juan Aliaga contained a material misstatement and that this misstatement affected Continental's acceptance of the risk.  The issue is whether that application is admissible pursuant to N.J.S.A. § 17B:27-13 (2004) to show that Continental properly rescinded the policy.

Plaintiff argues that the misstatement made on the application is *inadmissible* because Continental has no evidence to show that it attached the application to the policy when it was issued. Plaintiff contends that even though it was Continental's normal practice to *send* a copy of the application to the insured when the policy was issued, this normal practice does not comport with the statutory requirements because it does not involve *attaching* the application to the policy.  The parties' arguments raise an apparent issue of first impression.

It is this Court's duty to predict how the state's highest court would rule.  Borman v. Raymark Industries, Inc., 960 F.2d 327, 331 (3d Cir. 1992).  However, without any New Jersey case

law on the issue, the Court must rely on the well-settled principle that the plain meaning of a statute "is conclusive, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intention of its drafters."  New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1498 (3d Cir. 1996) (quoting United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989)).

N.J.S.A. § 17B:27-13 (2004), the statute governing the admissibility of Juan Aliaga's application, states:

> There shall be a provision that a copy of the application, if any, of the policyholder *shall be attached to the policy when issued*, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, *and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or his beneficiary.*

N.J.S.A. § 17B:27-13 (2004) (emphases added).  This statute is included within Chapter 27, Article 1 of New Jersey's Life and Health Insurance Code.  Chapter 27 is entitled "Group Life, Group Health Insurance and Blanket Insurance" and Article 1 is entitled "Group Life Insurance."  The plain meaning of this statute is that, at least when group life insurance policies are involved, all statements made by the policyholder, including those made in the application for insurance, are admissible as evidence in an action involving the policy so long as the insurance company provides a copy of the alleged misstatement prior to admitting it in evidence.

Although N.J.S.A. § 17B:24-3(a) is not controlling in this case, it is interesting to compare its provisions with § 17B:27-13.  Section 17B:24-3(a), the statute governing individual insurance policies, flatly excludes an application as evidence unless the application was "attached to or endorsed upon the policy . . . when issued."  In contrast, § 17B:27-13 permits a statement made in

an application for group coverage to be used against the insured so long as "a copy of the instrument containing the statement is or has been furnished to such person or his beneficiary." The difference in language is significant. While § 17B:27-13 does state that the application "shall be attached to the policy when issued," it does not punish the failure to do so with an absolute prohibition on using the application as evidence in a later legal contest involving that policy. So long as the group life insurance application is "furnished to [the insured] or his beneficiary," it can be used as evidence in an action concerning that group life insurance policy. N.J.S.A. § 17B:27-13 (2004).

Other states have separate standards for admissibility that are nearly identical . See, e.g., Fla. Stat. §§ 627.408, 627.561; Ky. Rev. Stat. §§ 304.14-100, 304.16-140; Me. Rev. Stat. tit. 24-A §§ 2410, 2616. The distinction makes sense: an individual policy is a one-on-one contract with the insured, whose information is crucial to the underwriting decision. Prior to issuing an individual policy, the insurance company has an opportunity to investigate the applicant's medical history and the application is typically much more involved than a group policy application.

In contrast, a group policy is *not* a one-on-one contract with the insured – a group policy is issued to an organization, and members of that organization are eligible for coverage under that policy as a benefit of membership in that organization. As a consequence, group applications are short and ask general, yes-or-no questions. As a case in point, the group application completed by Juan Aliaga was the size of a typical bank deposit slip and asked only four yes-or-no questions related to the applicant's health. (Admin. Rec. at CCC00181.) While the insurance company has less information about each insured in a group policy, the risk is spread wide among a group of people. Because the group policy application is less critical, it is logical that the provisions governing admissibility under § 17B:27-13 are less rigorous than those in § 17B:24-3(a), and finding

them to be less rigorous in resolving the issue before the Court does not "produce a result demonstrably at odds with the intention of [the] drafters."  New Rock Asset Partners, L.P., 101 F.3d at 1498.

Although it is unclear whether or not the application was attached to the policy when Continental sent it to Juan Aliaga, the parties agree that it was Continental's normal practice to send a copy of the application to the insured when the policy was issued.  (Jt. Stmt. of Facts at ¶ 23.) While this tends to show that Continental likely sent Juan Aliaga a copy of his application when it issued the policy, thereby meeting the statutory requirement at the time the policy was issued, reliance on Continental's normal practice is not necessary.  Section 17B:27-13 simply requires Continental to furnish Juan Aliaga *or* plaintiff with a copy of the application at some point before introducing it as evidence in this case.  It is uncontested that a copy of the application has been provided to plaintiff during the course of the administrative proceedings and discovery (Jt. Stmt. of Facts at ¶ 6; Admin. Rec. at CCC00181), so Continental has complied with the statutory requirements.  For these reasons, under § 17B:27-13 the application is admissible.

## C.  Admissibility of the Application Pursuant to the Policy's Terms

As it turns out, the terms of the policy issued to Juan Aliaga are more restrictive regarding the admissibility of statements made by the insured than § 17B:27-13.  Specifically, the policy states:

> Any statement made by the Holder or by any Insured shall, in the absence of fraud, be deemed a representation and not a warranty.  No such statements shall void the insurance, reduce the benefits or be used in defense to a claim under the Policy unless it is in writing, a copy of which has been furnished to the Holder or the Insured, *whoever made the statement*.

(Admin. Rec. at CCC00059 (emphasis added).)  Plaintiff argues that in support of her case that there is no evidence that a copy of the application was ever furnished to Juan Aliaga.  The Court disagrees.

The parties agree that there is no direct evidence which shows that the application was or was not sent to Juan Aliaga.  (Jt. Stmt. of Facts at ¶ 21-22, 24-25.)  Nonetheless, they have stipulated as follows:

> Pursuant to Continental's normal practice, once [Juan] Aliaga was approved for coverage, a certificate of coverage would have would have been sent to him.  A copy of [Juan] Aliaga's application would have also been sent back to him and [Juan] Aliaga would have been told to keep a copy of the Application with the certificate of coverage.

(Jt. Stmt. of Facts at ¶ 23.)  This serves as a predicate for a jury instruction, were this matter tried, that the jury must find the facts set forth in this joint stipulation.  The factfinders would not have to determine whether Juan Aliaga's application was actually sent back to him by Continental, along with Continental's directions that he should  keep a copy of the application along with the certificate of coverage, as these would not be facts in dispute.  If this were not enough, Continental has provided an affidavit of the Claims Manager who oversees the processing of applications submitted to te company. He attests that based upon his review of Juan Aliaga's application, "[w]hen coverage was approved for policies of this nature, a certificate of coverage would have been sent to the insured."  (Decl. of Jacque Dodd at ¶ 6.)  The employee also declared that

> it was the custom and practice of ABG [Continental's Plan Administrator – the company the Claims Manager works for], to send a copy of a general notice and the original application for coverage *to the insured*. . . .
>     The general notice provides that the insured should keep a copy of the application with the certificate of coverage.

(Id. at ¶¶ 7-8 (emphasis added).)

Federal Rule of Evidence 406 governs the admissibility of evidence of the routine practice of an organization.  The rule states:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is

relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.  A leading treatise defines routine practice of an organization as "the regular practice of responding to a particular kind of situation with a specific type of conduct."  Kenneth S. Brown, ed., 1 McCormick on Evidence § 195, at 783 (6th ed. 2006).  There is a dearth of Third Circuit precedent interpreting the rule, but it is widely recognized that the "existence of . . . the business custom may be established by a knowledgeable witness's testimony that there was such a habit or practice."  Id. at 786.

Based on the statement of stipulated facts and the declaration of the Claims Manager, the Court is satisfied that there is no issue of fact regarding Continental's having furnished a copy of the statement to Juan Aliaga, the maker of the statement, consistent with its obligations under the contract. As a consequence, the Court finds that Juan Aliaga's material misstatement on the application is admissible and that Continental could rely upon it in deciding to rescind.

**D.  Continental's Decision to Rescind the Policy**

It is well-settled that the doctrine of equitable fraud permits insurance companies to rescind an insurance policy when a prospective insured makes a material misstatement on the application for insurance.  First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003).  The New Jersey Supreme Court has stated that "a representation by the insured, whether contained in the policy itself or in the application of insurance, will support the forfeiture of the insured's rights under the policy if [1] it is untruthful, [2] material to the particular risk assumed by the insurer, and [3] actually and reasonably relied upon by the insurer in the issuance of the policy." Id. at 137 (quoting Allstate Ins. Co. v. Meloni, 98 N.J. Super. 154, 158-59 (App. Div. 1967)).

All three of the requirements for rescission for a material misstatement have been stipulated

to in this case.  The parties agree that (1) the "answer to question 3a on the Application by [Juan] Aliaga was not true" (Jt. Stmt. of Facts at ¶ 10); (2) the "answer to question 3a on the Application was a material misstatement and affected Continental's acceptance of the risk" (Jt. Stmt. of Facts at ¶ 11); and (3) "[i]n reliance on the Application, Continental issued life insurance coverage to [Juan] Aliaga." (Jt. Stmt. of Facts at ¶ 12).  Continental acted within its rights in rescinding Juan Aliaga's insurance policy.

## V.    CONCLUSION

The issue in this case is singular and specific: based on statutory and contractual requirements, did Continental properly rely on Juan Aliaga's application in denying coverage on the group life policy that it issued to him?  The  Court has resolved this question in Continental's favor.  Therefore Continental's motion for summary judgment is **granted** and plaintiff's motion for summary judgment is **denied**.  An appropriate order will be entered.


Dated:  November 13, 2006                    /s/ Katharine S. Hayden

                                             Katharine S. Hayden, U.S.D.J.

-12-